# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel 202.955.8500
gibsondunn.com

Matthew D. McGill
Direct: +1 202.887.3680
Fax: +1 202.530.9662
MMcGill@gibsondunn.com

May 26, 2023

<u>VIA CM/ECF</u>

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: *Owens v. Taliban*, Nos. 23-354 & 23-797

Dear Ms. Wolfe:

We write regarding the motion for stay pending appeal filed in No. 23-354, which seeks a stay of the district court's order vacating Plaintiffs-Appellants' ("Victims") prejudgment attachment of approximately $1.4 billion of funds held in the name of Da Afghanistan Bank ("DAB") at the Federal Reserve Bank of New York. Dkt. 82.[1] Because the district court has now entered final judgment in the underlying case, we have since filed a related appeal, No. 23-797, which the Court has consolidated with No. 23-354. We now request that that the motion for stay pending appeal in No. 23-354 be treated as applicable to No. 23-797 as well.

Because both Nos. 23-354 and 23-797 seek the Court's review of the same underlying order vacating Victims' $1.4 billion prejudgment attachment of blocked assets, the arguments in support of staying that order are the same in both cases. The only difference is that insofar as it goes to likelihood of success on the merits, the Court's jurisdiction in No. 23-797 rests on a different basis. While the Court has jurisdiction over No. 23-354 under the collateral order doctrine, it has jurisdiction over No. 23-797 as an appeal from a final judgment. Thus, if there was any question about the Court's jurisdiction in No. 23-354, No. 23-797

---

[1] Unless otherwise indicated, "Dkt." citations refer to the district court's docket, No. 1:22-cv-01949 (VEC) (S.D.N.Y.).

Abu Dhabi · Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles
Munich · New York · Orange County · Palo Alto · Paris · San Francisco · Singapore · Washington, D.C.

# GIBSON DUNN

Catherine O'Hagan Wolfe
U.S. Court of Appeals for the Second Circuit
May 26, 2023
Page 2

provides yet another avenue for the Court to review the order vacating Victims' prejudgment attachment.

It is axiomatic that the Court has jurisdiction over appeals from final judgments, 28 U.S.C. § 1291, including interlocutory orders merged into final judgments, *see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 141 n.25 (2d Cir. 2011). The Court thus has statutory jurisdiction over No. 23-797. And although the Owens Plaintiffs obtained default judgment in their favor, they also have appellate standing to seek review of the district court's order vacating their attachment following final judgment.

As the Supreme Court has made plain, "[i]n an appropriate case," "appeal may be permitted from an adverse ruling *collateral to the judgment* on the merits at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art. III." *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 334 (1980) (emphasis added); *see also Camreta v. Greene*, 563 U.S. 692, 702 (2011) ("So long as the litigants possess [a] personal stake … an appeal presents a case or controversy, no matter that the appealing party was the prevailing party below."). A prevailing party has such a stake (which is frequently referred to as "appellate standing") when it is "aggrieved by some aspect of the trial court's judgment." *In re DES Litig.*, 7 F.3d 20, 25 (2d Cir. 1993); *see also ACLU v. Dep't of Justice*, 894 F.3d 490, 494 (2d Cir. 2018) (same).

In *Roper*, the Supreme Court permitted plaintiffs to appeal the denial of class certification—*i.e.*, "a procedural ruling, collateral to the merits of a litigation"—"after the entry of final judgment," even though the plaintiffs won individual judgments. *Roper*, 445 U.S. at 336. Plaintiffs there maintained a personal stake in the "class certification question" because of "their desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails." *Id*. Similarly, in *ACLU*, which involved FOIA requests "seeking documents relating to lethal drone strikes," this Court held that the government had appellate standing because it was "sufficiently" "aggrieved" by a district court ruling that "a certain fact" had "been officially acknowledged by

GIBSON DUNN

Catherine O'Hagan Wolfe
U.S. Court of Appeals for the Second Circuit
May 26, 2023
Page 3

the United States Government," even though the government prevailed on the merits of whether the requested documents "were exempt from FOIA disclosure" before the district court. 894 F.3d at 492–94.

Here, there is no question that Victims have Article III standing for both of their appeals, and for the same reason they also maintain a sufficient "stake" for appellate standing in No. 23-797. *See Camreta*, 563 U.S. at 702 (standing requires (1) injury, (2) causation, and (3) redressability); *ACLU*, 894 F.3d at 494 (requiring prevailing party to be "aggrieved" by judgment). If allowed to stand, the district court's order vacating Victims' prejudgment attachment—which is entirely collateral to the merits of their default judgment—will make it exceedingly difficult, if not impossible, for Victims to recover on their judgment.

As the district court found when it originally granted Victims prejudgment attachment, there are "numerous" creditors of the Taliban, and "limited" Taliban "assets in the United States." Dkt. 38, at 11–12. Victims' prejudgment attachment and levy of the DAB assets secured approximately $1.4 billion of funds to satisfy their $5 billion judgment. Without that attachment, which also ensured that the United States would not siphon off the remaining DAB funds for its own purposes, Victims lose their priority to the DAB funds.[2] The DAB assets held at the Federal Reserve Bank of New York (after the United States took half) total approximately $3.5 billion. At the time of Victims' attachment, other Taliban creditors had already obtained writs of execution against the DAB funds before them, and after Victims' attachment, other creditors obtained further writs of execution totaling more than $14 billion against the DAB funds.[3] Victims'

---

[2] As detailed in Victims' motion for a stay pending appeal in No. 23-354, the United States has already taken half of the DAB funds (*i.e.*, $3.5 billion) for its own policy purposes. *See* Dkt. 16-1, at 6–7, No. 23-354.

[3] All of these other writs were also vacated in a different district court decision, and the appeals from that other decision have been consolidated in this Court under No. 23-258, which will be argued in tandem with the appeals here. *See*

# GIBSON DUNN

Catherine O'Hagan Wolfe
U.S. Court of Appeals for the Second Circuit
May 26, 2023
Page 4

attachment thus secured their spot in a very long line that far exceeds the available funds.

Given the thousands of other creditors holding billions of dollars in judgments against the Taliban, not to mention the continuing possibility that the United States will again confiscate the DAB funds for its own uses, it is extremely unlikely that Victims will be able to satisfy their judgment with the DAB funds absent their prejudgment attachment. And considering that the Taliban will not voluntarily pay the more than $5 billion it owes Victims, and Victims are unaware of other Taliban assets in the United States, apart from the DAB funds, Victims likely will be unable to recover on their judgment *at all* without the prejudgment attachment. Thus, there can be no question that Victims remain aggrieved by the district court's vacatur of their prejudgment attachment, apart from the entry of default judgment in their favor, and Victims have appellate standing in No. 23-797.

For the same reasons, Victims continue to urge the Court to stay the district court's order vacating their attachment. A stay is necessary to preserve the status quo and hold Victims' place in line, while the Court considers the many claims against the DAB funds.

Accordingly, because the Court has appellate jurisdiction, and for the reasons stated in the motion for stay pending appeal in No. 23-354, Victims request that the Court enter a stay pending appeal of the district court's order vacating prejudgment attachment, Dkt. 82, in both Nos. 23-354 and 23-797.

---

Dkt. 34, No. 23-354. Creditors in those cases have also requested a stay pending appeal to secure their own claims to the DAB funds.

# GIBSON DUNN

Catherine O'Hagan Wolfe
U.S. Court of Appeals for the Second Circuit
May 26, 2023
Page 5

Sincerely,

/s/ Matthew D. McGill

GIBSON, DUNN & CRUTCHER LLP

cc: All counsel of record